## Paglia's Estate

*Hugh McAnany*, for guardian.

*James R. Wilson* and *Francis S. Goglia*, for G. A. Revello, claimant.

*Thomas B. K. Ringe*, Assistant City Solicitor, for City of Philadelphia, claimant.

*James F. McMullen*, for Commonwealth of Pennsylvania, claimant.

Kun, J., January 10, 1936.—On the audit of the account of the guardian of the above-named feeble-minded person it was stated that the balance was not sufficient to pay the claims of the State and of the city for her maintenance. A claim was presented in behalf of G. A. Revello, undertaker, for $300 for the burial of a daughter of the ward. The novel question presented is whether the estate of the feeble-minded mother is chargeable therewith.

It appears that the husband of the ward died on December 25, 1924, leaving the ward, his widow, and nine children. Shortly thereafter, the widow was adjudged a feeble-minded person and a guardian was appointed for her estate. The care of the family was assumed by the oldest daughter, who worked and otherwise assisted in the support of the family. Some of the children were sent to a home and as these grew old enough to be discharged others were sent to the home in their place. Three of the boys are still in homes, one at Girard College, and two in the Dante Home. The deceased daughter, Angelina, the bill for whose burial is under consideration, suffered from tuberculosis for several years, and was in the care of an older sister. She died at the Philadelphia General Hospital at the age of 22 years, without funds of any kind, having been unable to work

for several years prior to her death because of her tubercular condition. Her burial was conducted at the instance of one of the children who had charge of the household.

We think, under the circumstances, that the estate of the feeble-minded mother should be charged with a reasonable sum for the burial of her daughter, who was sickly and indigent and unable to work for a living because of her tubercular condition.

In Commonwealth, ex rel., v. O'Malley, 105 Pa. Superior Ct. 232, the question came up whether there was a legal duty on the part of a father to support an adult child who was physically incapable of self-support. The court said, at page 234:

"Ordinarily a parent is not required to support his adult child but there is a well recognized exception supported by abundant authority that where such child is too feeble physically or mentally to support itself the duty on the parent continues after the child has attained his majority. The cases supporting this statement are collected in 46 C. J. P. 1169, section 4. The two Pennsylvania cases cited are Mt. Pleasant Overseers v. Wilcox, 2 D. R. 628; Commonwealth v. Ulrick, 32 Pa. C. C. 283."

The court pointed out at page 235 that

". . . the acts of 20 March, 1803, Section 29 (Chapter 2357 Bioren) ; 13 June, 1836, P. L. 539, Section 78, and 13 April, 1867, P. L. 78, make no restrictions as to the age of the child to be maintained, and it is significant that as long ago as 1803 the act of that year provides that the father, inter alios, [grandfather, mother, grandmother] of any poor, blind, lame and impotent person, or poor person not able to work, shall relieve their necessities."

Likewise, the Act of April 6, 1905, P. L. 112, sec. 4, provides that:

"The husband and wife, the father, the mother, and the children, respectively, of every poor person shall, at

their own charge, being of sufficient ability, relieve and maintain such poor person".

In a proper case, the mother of an adult child would be chargeable with his maintenance quite as much as a father would be: Clement's Petition, 18 Pa. C. C. 71; Roberts' Estate, 30 Pa. C. C. 383. There is no reason why the fact that the mother has been declared feeble-minded and incompetent should relieve her estate from the obligation of supporting an indigent child in a case like this when the other parent, the father, is deceased, leaving no estate. Commonwealth, ex rel., v. Namet, 70 Pitts. 499, was a proceeding in which the substantive obligation was not questioned, though the petition for maintenance was dismissed, without prejudice, however, so that additional information on the merits could be furnished.

It is clear, therefore, that the common-law rule which made the father alone liable for the maintenance of his children has been changed by statute so that the mother may, in proper cases, be chargeable with such an obligation. Just as there is a duty on the part of a parent to maintain and support a child, even an adult child under some circumstances as we have shown, there would appear to be a corresponding duty to provide a proper burial for a deceased child. As early as Reg. v. Vann, 5 Cox's Crim. C. 379, 380, before Alderson, B., it was said: "The duty of providing burial is as imperative as that of providing sustenance". Lord Campbell, C. J. said, at page 381: "Now there is no doubt that if a parent has the means of giving his child christian burial, he is bound to do so." The basis of this duty is stated in Sullivan v. Horner, Admr., 41 N. J. Eq. 299, at page 303, to be necessity and public decency.

The only case in which the question has come up in Pennsylvania, though somewhat indirectly, is Bair v. Robinson et ux., 108 Pa. 247. The question in that case was whether a married woman is liable upon her contract for the funeral expenses of her mother, who lived

and died in her household, leaving no estate. While the case was argued on the question as to whether or not such a contract could be construed to be one for necessaries under the Act of April 11, 1848, P. L. 536, and the court held that it could be, the broad proposition was stated by the court at page 249: "A child, or as in this instance, a mother, must not only be housed, fed and clothed when in health, have proper medical attendance and nursing when sick, but must also, if only for the welfare of the remainder of the family, be buried out of sight when dead. Common decency as well as health and comfort require this."

We conclude, therefore, that just as there is the legal duty on a mother in certain circumstances to support and maintain a child or even an adult child, there is also the duty on a mother to pay the burial expenses of a child in like circumstances. There is no reason why this obligation should not be imposed on the estate of a mother who is incompetent or feeble-minded, as in the case before us, the other parent being deceased and leaving no estate.

The bill of the undertaker in this case, however, is in our opinion somewhat excessive. An undertaker employed in the circumstances such as appeared in this case ought not to provide more than the absolute minimum requirements for a burial, unless he has first assured himself that there is a solvent person or estate available for payment of a larger sum. We have here, as we have stated, an insolvent estate of a feeble-minded person, insufficient to pay the claims of the Commonwealth and of the City and County of Philadelphia as reimbursement for the care and maintenance of the ward.

We accordingly allow the claim of the undertaker in the sum of $100.